**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**CHESAPEAKE BAY FOUNDATION, INC.,**

**Plaintiff,**

**v.**

**U.S. ARMY CORPS OF ENGINEERS,**

**Defendant.**

**Civil Action No.  09-1054 (JDB)**

---

**MEMORANDUM OPINION**

Chesapeake Bay Foundation, Inc. ("CBF") brings this action against the United States Army Corps of Engineers pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking records pertaining to permits for development on two islands in the Magothy River, a tributary of the Chesapeake River.  At issue is whether the Corps properly withheld certain records from disclosure pursuant to FOIA exemptions 5 and 7.

The Court denied the parties' initial motions for summary judgment, concluding that the Corps had "fail[ed] to abide with consistent precedent requiring detailed explanations of why each claimed exemption is relevant to, and correlated with, the withheld records."  Chesapeake Bay Found. v. Army Corps of Eng'rs, 677 F. Supp. 2d 101, 108 (D.D.C. 2009).  "Nevertheless, the Court . . . imagine[d] that the asserted justifications may be valid as to at least some of the withheld records," and accordingly did not grant summary judgment to either party.  Id.  Instead, it gave the Corps an opportunity to "supplement its Vaughn index and declarations" in order to "adequately describ[e] the records withheld and specifically detail[] how the claimed exemptions apply to the withheld information."  See id. at 109.

The Corps thereafter filed a renewed motion for summary judgment, a second <u>Vaughn</u>

index, and a new set of declarations.  During briefing on that motion, the Corps released, or

redacted and released, several documents that previously had been withheld in their entirety.  <u>See</u>

Def.'s Notice [Docket Entry 34], Decl. of James Mirynowski ("Mirynowski Decl."), ¶¶ 3-4.  The

Court then ordered the Corps to "file a new <u>Vaughn</u> index that accounts for its April 15, 2010

document release, and correlates its exemption claims with the remaining documents withheld in

whole or in part."  May 26, 2010 Order [Docket Entry 33], at 1.  The Corps has filed a third

<u>Vaughn</u> index to fulfill this obligation.  Remaining at issue are sixteen documents that have been

either redacted and released, or withheld in their entirety.

<b>STANDARD OF REVIEW</b>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate

"if the pleadings . . . and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material

facts are those that "might affect the outcome of the suit under the governing law."  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The movant bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 322 (1986).  The party opposing a motion for summary judgment, however, "may not

rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits

or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."

Fed. R. Civ. P. 56(e)(2).  The nonmoving party must do more than simply "show that there is

some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Any factual assertions in the movant's affidavits will be

accepted as true unless the opposing party submits its own affidavits or other documentary

evidence contradicting the assertion.  See Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA requires federal agencies to release all records responsive to a proper request except

those protected from disclosure by one or more of nine enumerated exemptions set forth at 5

U.S.C. § 552(b).  A district court is authorized "to enjoin [a federal] agency from withholding

agency records or to order the production of any agency records improperly withheld from the

complainant."  5 U.S.C. § 552(a)(4)(B); see also Kissinger v. Reporters Comm. for Freedom of

the Press, 445 U.S. 136, 139 (1980).  The agency has the burden of proving that "each document

that falls within the class requested either has been produced, is unidentifiable, or is wholly

exempt from the Act's inspection requirements."  Goland v. Cent. Intelligence Agency, 607 F.2d

339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted); accord Maydak v. Dep't of

Justice, 218 F.3d 760, 764 (D.C. Cir. 2000).  But the district court may award summary judgment

to an agency solely on the basis of information provided in affidavits or declarations that describe

"the documents and the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen,

484 F.2d 820, 826 (D.C. Cir. 1973).

## ANALYSIS

I.    **Exemption 7**

Exemption 7 permits an agency to withhold information compiled for law enforcement

purposes to the extent that production of such information "could reasonably be expected to

constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Here, the

Corps has redacted from eight documents both the names of sources "who provided information

to the Corps that resulted in an enforcement action," and the sources' contact information.[1]  Def.'s

Mem. in Supp. of Renewed Mot. to Dismiss ("Def.'s Mem.") [Docket Entry 26], at 9; see also

Def.'s Notice, Ex. B (Third Vaughn Index), Doc. 138 ("Source personal contact information is

redacted."); id., Doc. 168 ("Personal contact information of the source redacted.").  CBF does not

dispute that the records containing the redacted information were compiled for law enforcement

purposes.[2]  Therefore, the only question before the Court is whether the release of the redacted

information would constitute "an unwarranted invasion of personal privacy."  5 U.S.C. §

552(b)(7)(C).

In the Corps's view, all "individuals have significant privacy interests in information

concerning their names and their relation to the enforcement action, their home addresses and

phone numbers."  Def.'s Mem. at 9.  As a general matter, this is correct: "third parties who may

be mentioned in investigatory files, as well as . . . witnesses and informants who provided

information during the course of an investigation" "have an obvious privacy interest cognizable

under Exemption 7(C)."  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir.

1995); accord id. at 896 ("[D]isclosure of the identities of private citizens mentioned in law

---

[1] These documents are 43-45, 48-49, 64, 138, 165, 167, 168, and 266-267.  Taking a cue
from the Corps's Vaughn index, each document is referred to by its page number or, where
appropriate, page range.

[2] Nor, does it seem, could they: the withheld information is included in files documenting
the Corps's enforcement actions.  See Def.'s Mem. at 6 (information "related to the enforcement
actions which were the object of Plaintiff's FAIA [sic] request"); accord id., Ex. 5 (Decl. of
Sandra Zelen ("Zelen Decl."), ¶¶ 9, 10.

enforcement files constitutes an unwarranted invasion of privacy and is thus exempt under

7(C)."). CBF does not dispute this proposition. Rather, it contends that the Corps must release

the sources' identities because the information is already in the public domain: "The Corps has

already identified the sources of each of the communications in question, and therefore the

further disclosure of the same previously-disclosed information could not be 'reasonably

expected to constitute an invasion of privacy.'" Pl.'s Mem. in Supp. of Cross-Mot. for Summ. J.

("Pl.'s Mem.") [Docket Entry 28], at 20. Notably, CBF nowhere contends that the remaining

information about the sources must be released.

      Under the public domain doctrine, FOIA-exempt information may not be withheld if it

was previously "disclosed and preserved in a permanent public record." Cottone v. Reno, 193

F.3d 550, 554 (D.C. Cir.1999). The plaintiff "bear[s] the initial burden of pointing to specific

information in the public domain that appears to duplicate that being withheld." Afshar v. Dep't

of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983); accord Davis v. Dep't of Justice, 968 F.3d 1276,

1279 (D.C. Cir. 1992). CBF has done so here: it has demonstrated that, in its initial Vaughn

index, the Corps previously disclosed the names of the sources that are now being withheld. See

Pl.'s Mem. at 20-21; see also id., Ex. H (First Vaughn Index), Docs. 43-45, 48-49, 64, 138, 165,

167, 168, 266-67. Because these names are now publicly available, the Corps can no longer

redact them. See Hall v. Dep't of Justice, 552 F. Supp. 2d 23, 30-31 (D.D.C. 2008) ("The court

agrees that, to the extent that the non-redacted portions specifically identify the names of

individuals in specific redacted portions of the documents, [the Department of Justice] cannot

redact these names. The FOIA exemptions do not apply once the information is in the public

domain.").[3]

The public domain exception, however, only requires release of that information identical to the information that is publically available -- here, the names of the sources.  See Davis, 968 F.2d at 1280 ("We conclude, then, that to obtain portions of tapes alleged to be in the public domain, Davis has the burden of showing that there is a permanent public record of the exact portions he wishes." (emphasis added)).  Although, the Corps may continue to withhold the sources' remaining personal contact information -- for example, their home addresses, telephone numbers, and relation to the enforcement action -- it must release their names.[4]

## II.      Exemption 5

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  That is, "[e]xemption 5 'incorporates the traditional privileges that the

---

[3] The Corps asserts that it "inadvertently listed the names of the authors of those documents" in its first Vaughn index.  Def.'s Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply") [Docket Entry 29], at 15 n.10.  But through such inadvertence, the Corps has already irretrievably placed the sources' names in the public domain.  This is not a situation, as may be true in the national security context, where inadvertent disclosure of information -- and a concomitant absence of official acknowledgment -- renders inapplicable the public domain exception.  See Phillippi v. Cent. Intelligence Agency, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) ("In the world of international diplomacy, where face-saving may often be as important as substance, official confirmation . . . could have an adverse effect on our relations [with other countries].").

[4] The Corps also purports to redact the names of its sources and the sources' contact information pursuant to exemption 7(D), which permits an agency to withhold information that "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D); see also Third Vaughn Index, Docs. 43-45, 48-49, 64, 138, 165, 167, 168, 266-267.  But it fails to explain in any of its submissions how this exemption applies to the redacted information.  Without such an explanation, the Corps cannot withhold any information pursuant to exemption 7(D).  See Maydak, 218 F.3d at 764 ("The government bears the burden of proving the applicability of any statutory exemption it asserts in denying a FOIA request.").

Government could assert in civil litigation against a private litigant' -- including the presidential

communications privilege, the attorney-client privilege, the work product privilege, and the

deliberative process privilege -- and excludes these privileged documents from FOIA's reach."

Loving v. Dep't of Def., 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting Baker & Hostetler LLP v.

Dep't of Commerce, 473 F.3d 312, 321 (D.C. Cir. 2006)).  Here, the Corps seeks to withhold

thirteen documents under exemption 5, invoking the attorney-client privilege, the attorney-client

common interest privilege, and the deliberative process privilege.[5]  The Court takes each in turn.

> A.    Attorney-Client Privilege

The attorney-client privilege protects from disclosure information "communicated to or

by an attorney as part of a professional relationship in order to provide the [client] with advice on

the legal ramifications of its actions."  Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242,

253 (D.C. Cir. 1977); accord In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (privilege

applies to communications "made 'for the purpose of securing primarily either (i) an opinion on

law or (ii) legal services or (iii) assistance in some legal proceeding.'" (quoting In re Sealed Case,

737 F.2d 94, 98-99 (D.C. Cir. 1984))).  Here, the Corps contends that the privilege applies to

information in documents 61 and 310-12.  The CBF concedes that the privilege applies to

document 61.  See Pl.'s Mem. at 17.  The parties, however, disagree over whether the privilege

covers document 310-12.

Document 310-12 is an email exchange among Corps regulatory personnel, public affairs

_____

[5] The Corps also withholds document 205-206 based in part on the attorney work product
privilege.  See Third Vaughn Index, Doc. 205-06.  Yet none of its submissions explain how the
exemption applies to the document.  Hence, it cannot withhold document 205-06 based on the
attorney work product privilege.  See Maydak, 218 F.3d at 764.

officers, and legal counsel that "discusses guidelines regarding presenting the ongoing

enforcement investigation to the press."  Third Vaughn Index, Doc. 310-12.  To support its

application of the attorney-client privilege to this document, the Corps observes that the

document "includes regulatory personnel reiterations and characterizations of legal advice from

[Corps] legal counsel."  Id.  But merely stating that a communication contains "legal advice," or

comes from an attorney, is insufficient to show that the privilege is appropriate.  See Mead Data

Cent., 566 F.2d at 253 ("The privilege does not allow the withholding of documents simply

because they are the product of an attorney-client relationship . . . .");  see also Elec. Privacy Info.

Ctr. v. Dep't of Justice, 511 F. Supp. 2d 56, 73 (D.D.C. 2007) (defendant cannot rely on broad

and general exemption claims).  None of the Corps's submissions -- and certainly not the

document description itself -- explains that the purported "legal advice" was conveyed "as part of

a professional relationship in order to provide [the Corps] with advice on the legal ramifications

of its actions."  Mead Data Cent., 566 F.2d at 253.  Nor has the Corps indicated, as the privilege

requires, that the advice was kept confidential and not transmitted to third parties.  See id.

Without such representations, the Corps has not shown that the attorney-client privilege applies

to document 310-12, which, after all, discusses the presentation of information to the press.[6]

---

[6] The Corps's briefing contradicts itself as to the identity of the attorney rendering the purported legal advice.  Whereas its Vaughn index indicates that the attorney was from the Corps of Engineers, see Third Vaughn Index, Doc. 310-12, its motion papers suggest that the attorney was from Anne Arundel County, see Def.'s Reply at 13.  The Corps neither explains this discrepancy nor establishes that it has an attorney-client relationship with counsel from Anne Arundel County, a highly doubtful proposition.  The Court's inability to determine who actually rendered the purported legal advice further evidences the Corps's failure to justify withholding information in document 310-12 under the attorney-client privilege.

B.        Attorney-Client Common Interest Privilege

The attorney-client common interest privilege "protects communications between a

lawyer and two or more clients regarding a matter of common interest." In re Sealed Case, 29

F.3d 715, 719 (D.C. Cir. 1994); accord U.S. ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 25

(D.D.C. 2002).  It applies to both "'communications subject to the attorney-client privilege'" and

"'communications protected by the work-product doctrine.'" U.S. ex rel. Purcell, 209 F.R.D. at

25 (quoting In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990)).  But the privilege

applies only where the same attorney represents each of the clients.  See In re Sealed Case, 29

F.3d at 719 (citing 1 Scott N. Stone & Robert K. Taylor, Testimonial Privileges § 1.21, at 1-54

(2d ed. 1993) ("Where the same attorney represents two or more clients having a common

interest, confidential communications made by those clients to the common lawyer will be

protected from disclosure to third parties.")).  Here, the Corps redacts information from

documents 171 and 205-06 based on the attorney-client common interest privilege.

According to the Corps, it, the Maryland Department of the Environment, and Maryland's

Anne Arundel County have common interests in pursuing enforcement actions, such as the action

underlying CBF's FOIA request.  See Def.'s Reply at 13-14 ("While Anne Arundel County

officials represent the interest of the citizens of that county, Corps officials represent the interests

of all American citizens, including those in Anne Arundel Country, thus, the interests directly

overlap.").  Therefore, the Corps concludes that privileged communications from Anne Arundel

County employees to their attorney that are then shared with Corps officials must also be

privileged under the attorney-client common interest doctrine.  See id. at 14 ("When the Corps is

required to consult and coordinate with Anne Arundel County on the Little Island enforcement

action, then communications between Anne Arundel County attorney [sic] and Corps

enforcement officials should not waive [the attorney-client] privilege . . . ."). The Corps is

incorrect. As discussed above, the attorney-client common interest privilege applies only where

the same attorney represents both of the clients. And the Corps has not shown that it has an

attorney-client relationship with counsel from Anne Arundel County or the county itself.

Without establishing this predicate fact, the Corps cannot withhold documents 171 and 205-06

under the attorney-client common interest doctrine.[7]

> C.      Deliberative Process Privilege

The Corps withholds twelve documents[8] under the deliberative process privilege, which

"protects [intra- or inter-]agency documents that are both predecisional and deliberative."

Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006). A document

is predecisional if "it was generated before the adoption of an agency policy" and deliberative if

"it reflects the give-and-take of the consultative process." Coastal States Gas Corp. v. Dep't of

Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); see also Dep't of the Interior v. Klamath Water

Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (privilege exempts from disclosure "'advisory

opinions, recommendations, and deliberations that are part of a process by which governmental

decisions and policies are formulated.'" (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck &

---

[7] Even if the Corps could show an attorney-client relationship with Anne Arundel County, or its counsel, the Corps has not demonstrated that the withheld information is protected by either the work product privilege or the attorney-client privilege. Again, the mere fact that the information may have come from counsel -- which is all that the Corps has shown here -- is insufficient to demonstrate that either privilege applies. See Mead Data Cent., 566 F.2d at 253.

[8] Those documents are 6, 9, 43-45, 48-49, 64, 165, 167, 169, 171, 205-06, 310-12, and 452-53.

<u>Co.</u>, 421 U.S. 132, 148 (1975))).

But the deliberative process privilege does not apply to all predecisional documents created during the deliberative process.  Rather, to be privileged, "the statement or document must have been 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'"  <u>Cobell v. Norton</u>, 213 F.R.D. 1, 5 (D.D.C. 2003) (quoting <u>Vaughn</u>, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).  Necessarily, then, the Court must be able to assess the "clear 'process' leading to a final decision."  <u>Coastal States Gas</u>, 617 F.2d at 868.  That is, "detailed information about the agency's decision-making process is essential . . . to a fair determination of the agency's [deliberative process] claims."  <u>Bristol-Myers Co. v. Fed. Trade Comm'n</u>, 598 F.2d 18, 28 n.20 (D.C. Cir. 1978).  Such information may include, for example, the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document" and "the relative positions in the agency's chain of command occupied by the document's author and recipient."  <u>Senate of Puerto Rico v. Dep't of Justice</u>, 823 F.2d 574, 585 (D.C. Cir. 1987) (internal quotation marks and citations omitted).

The Corps, however, fails to supply the information necessary to assess the propriety of its deliberative process withholdings.  The Corps offers only the declaration of Sandra Zelen, Enforcement Program Manager for the United States Army Engineer District, Balitmore.  <u>See</u> Third Zelen Decl. at ¶ 1.  But her declaration includes just a single paragraph explaining the Corps's decisionmaking process:

> As part of the Corps [sic] regulatory enforcement role under the Clean Water Act
> and the Rivers and Harbors Act, agency enforcement personnel investigate
> apparent violations, prepare internal reports, and maintain notes on their
> observations and proposed solutions.  These internal documents are maintained in
> the enforcement file, but do not reflect the final agency decision on the

appropriate enforcement action or remediation schemes and penalties.

Third Zelen Decl. at ¶ 14.  She also details the fact that the Corps consults with state agencies in

discharging its regulatory duties:

> Similarly, the Corps maintains a dialogue during the enforcement process with
> [the Maryland Department of the Environment] and Anne Arundel County
> officials regarding enforcement of their overlapping regulations . . . .  These
> exchanges propose and discuss enforcement measures which may be imposed on
> the violator.

Id.

Absent from this summary is any explanation of how the Corps's decisionmakers use

information from internal investigators, or from officials of the Maryland Department of the

Environment and Anne Arundel County, either generally in the decisionmaking process or with

respect to a specific decision.  See Senate of Puerto Rico, 823 F.2d at 585 (court must be able to

pinpoint the agency decision, process, or policy "to which the document contributed").  That is,

Zelen describes the discrete activities of the investigators and state officials, but fails to situate

them in the "give-and-take" of the decisionmaking process.  Indeed, she does not explain the

process at all.

To be sure, Zelen does indicate that she "supervise[s] the investigation and enforcement

of all unauthorized actions within the Baltimore District."  Third Zelen Decl. at ¶ 1.  But she

nowhere indicates what role the information coming from the investigators and state officials

plays in her decisionmaking.  Nor does she explain the "nature of the decisionmaking authority

vested" in either the Corps's regulatory officials or in state and county officials.  Id. at 586.

Without specific information, the Court cannot even guess as to the Corps's deliberative process.

See Coastal States Gas, 617 F.2d at 868 ("It is also clear that the agency has the burden of

establishing what deliberative process is involved, and the role played by the documents in issue

in the course of that process.").[9]  And without knowledge of the deliberative process, the Court

cannot assess the role withheld information "plays in the administrative process."  Id. at 867.

For example, the Court is left to wonder whether an investigator's enforcement

recommendations are ever incorporated into the Corps's final policy.  The record must be clear on

this fact as information loses its exempt status under the deliberative process privilege if an

agency "chooses expressly to adopt or incorporate by reference" the privileged material.  Sears,

Roebuck & Co., 421 U.S. at 161.  Yet the Corps indicates that only one of the documents

withheld under the deliberative process privilege was not incorporated into the final enforcement

decision.  See Third Vaughn Index, Doc. 452-53 ("[Corps] regulatory enforcement investigator's

unsigned handwritten notes which reflect alternatives for enforcement and environmental

restoration that were not fully incorporated in the final enforcement resolution.").  The remainder

---

[9] The information obtained from state officials -- contained in documents 9, 43-45, and 171 -- suffers from a separate threshold defect: it is not intra- or inter-agency.  As indicated, exemption 5 covers only "intra- or inter-agency records."  But that phrase generally does not encompass state and local agencies.  See 5 U.S.C. §552(3).  To be sure, documents "submitted by non-agency parties in response to an agency's request for advice . . . are covered by Exemption 5."  Nat'l Inst. of Military Justice v. Dep't of Def., 512 F.3d 677, 681 (D.C. Cir. 2008).  "But the fact about the consultant that is constant in the typical cases is that the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it."  Klamanth, 532 U.S. at 10-11; see also Public Citizen, Inc. v. Dep't of Justice, 111 F.3d 168, 171 (D.C. Cir. 1997) (records of outside consultant protected where agency "'enlists the help of outside experts skilled at unravelling [the] knotty complexities' of 'problems outside [the agency's] ken'" (first alteration in Public Citizen) (quoting CNA Fin. Corp. v. Donovan, 830 F.2d 1132, 1162 (D.C. Cir. 1987))).  Here, that relationship is plainly missing: "the Corps, Maryland, and county governments retain their autonomy under their respective laws to make permit decisions, investigate non-compliance and unauthorized activities, conduct enforcement actions, and impose penalties."  Third Zelen Decl. at ¶ 8.  "[T]here simply is no precedent for withholding documents under Exemption 5 where a federal agency and a non-federal entity share ultimate decision-making authority with respect to a co-regulatory project."  See People for the Am. Way Found. v. Dep't of Educ., 516 F. Supp. 2d 28, 39 (D.D.C. 2007).

of the documents fail to discuss this issue.[10]

Connecting Zelen's declaration with the Corps's third <u>Vaughn</u> index fails to cure these

deficiencies.  The index offers only general descriptions of the documents.  See, e.g., Third

<u>Vaughn</u> Index, Doc. 6 ("[Corps] regulatory investigator's handwritten notes which record

enforcement alternatives proposed by State agency enforcement personnel."); <u>id.</u>, Doc. 43-45

("[Corps] regulatory enforcement investigator's handwritten notes which give details of proposed

enforcement and remediation measures."); <u>id.</u>, Doc. 167 ("[Corps] regulatory enforcement

investigator's handwritten record of a conversation with source regarding a possible violation.");

<u>id.</u>, Doc. 310-12 ("[Corps] regulatory enforcement personnel, public affairs, and legal counsel

email exchange which discusses guidelines regarding presenting the ongoing enforcement to the

press.").  These descriptions give some sense of the "type" of documents at issue, but they simply

do not permit the Court to situate them in the Corps's decisionmaking process.  See <u>Judicial</u>

<u>Watch, Inc v. U.S. Postal Serv.</u>, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) (court must be able to

"identify 'the function and significance . . . in the agency's decisionmaking process' of the

redacted and withheld documents" (quoting <u>Arthur Andersen & Co.</u> 679 F.2d at 258)).

To be sure, as the Court noted in its prior opinion denying the parties' initial motions for

---

[10]And although Zelen does indicate that some of the documents at issue -- although not all of them -- "form the basis of the Corps' position, decisions and paths forward on these [enforcement] actions," Third Zelen Decl. at ¶ 10, this statement merely paraphrases the definition of what types of documents can be withheld under the deliberative process privilege. See <u>Klamath Water Users Protective Ass'n</u>, 532 U.S. at 8-9 (privilege exempts from disclosure "'advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated.'" (quoting <u>Sears, Roebuck & Co.</u>, 421 U.S. at 148)).  Accordingly, her statement provides no detail about the withheld documents' "function and significance" in the Corps's deliberative process. See <u>Arthur Andersen & Co. v. Internal Revenue Serv.</u>, 679 F.2d 254, 258 (D.C. Cir. 1982).

summary judgment, the Court can imagine that the deliberative process privilege may be valid as

to at least some of the records.  See Chesapeake Bay Found., 677 F. Supp. 2d at 108.  For

example, the Corps has withheld several documents that detail the observations and enforcement

proposals of its investigators.  See, e.g., Third Vaughn Index, Docs. 43-45, 48-49, 452-53.  "As a

general matter, notes taken by government officials often fall within the deliberative process

privilege."  Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312, 322 (D.C. Cir. 2006).

But absent information detailing the "clear 'process' leading to a final decision," Coastal States

Gas, 617 F.2d at 868, the Court simply cannot assess the applicability of the privilege.  It may be

that the Corps incorporated the investigator's proposals into its final decision.  Or it may be that

some of the information is "simply straightforward explanations of agency regulations in specific

factual situations."  Id.  But the Court can only resolve these issues by guessing, and the Corps

cannot rely on the Court's conjecture to justify its withholdings.  See Bristol-Myers Co., 598 F.2d

at 28 n.20; see also Maydak, 218 F.3d at 764.[11]

    In denying the parties' first motions for summary judgment, the Court ordered the Corps

---

    [11] Also missing from the Corps's submissions is a detailed explanation of the harm that
would befall it if the withheld records were released.  See Mead Data Cent., 566 F.2d at 258.
The Corps "must show by specific and detailed proof that disclosure would defeat, rather than
further, the purposes of the FOIA."  Id.; accord Judicial Watch, Inc. v. U.S. Postal Serv., 297 F.
Supp. 2d at 265.  Its generalized statements of potential harm fail to meet this burden of
demonstrating that disclosing a record would actually result in harm.  See Third Zelen Decl. at ¶
10 ("Release of the requested documents in these files would interfere with these investigations
and jeopardize the unresolved enforcement actions."); id. at ¶ 14 ("Release of these internal
documents under FOIA would inhibit both the investigating official's first hand record and
assessment of alleged violations."); see also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250
(D.C. Cir. 1993) ("[A]n affidavit that contains merely a categorical description of redacted
materials coupled with categorical indication of anticipated consequences of disclosure is clearly
inadequate." (internal quotation omitted)); Mead Data Cent., 566 F.2d at 258 ("An agency cannot
meet its statutory burden of justification by conclusory allegations of possible harm.").

to "supplement its Vaughn index and declarations, adequately describing the records withheld

and specifically detailing how the claimed exemptions apply to the withheld information."

Chesapeake Bay Found., 677 F. Supp. 2d at 108.  Although the Corps has now had two

opportunities to fulfill this mandate, it has not done so -- the Court still cannot assess the

propriety of the Corps's withholdings under the deliberative process privilege.  And therefore the

Court continues to labor under an "'asymmetrical distribution[ ] of knowledge' where the agency

alone possesses, reviews, discloses, and withholds the subject matter of the request."  Judicial

Watch, Inc. v. Food & Drug Admin., 449 F.3d at 146.  Simply put, the Corps has not met its

burden "to establish [its] right to withhold information from the public."  Coastal States Gas, 617

F.2d at 861.[12]  Accordingly, the Court will require the Corps to disclose those records that have

been withheld under the deliberative process privilege.[13]

_____

[12] In light of the fact that the Corps has already had two opportunities to justify its
deliberative process privilege assertion under exemption 5 -- the second with the benefit of clear
direction from the Court -- in camera review is not warranted here.  Nor has the Corps suggested
that the Court adopt this disfavored approach.  In any event, it is not clear that in camera review
would aid the Court: it is the Corps's failure to detail the clear process leading to a final decision,
and not its failure to describe the documents, that is most telling here.

[13] Because the Court concludes that the Corps cannot withhold any records under the
deliberative process privilege, it need not consider whether the Corps has met its obligation to
disclose all reasonably segregable, non-exempt material.  Nevertheless, the Court has concerns
that the Corps has not fulfilled this obligation either.  In an attempt to demonstrate that it has
disclosed all reasonably segregable material, the Corps offers only that "[a] review of Defendant's
declarations and attached exhibits reveals that Defendant carefully reviewed the information and
confirms that all reasonably segregable non-exempt material has been released."  Def.'s Mem. at
18.  This is the same language that the Corps used in its first motion for summary judgment, and
the same language that the Court concluded did not adequately demonstrate that it had fulfilled
its obligation.  See Chesapeake Bay Found., 677 F. Supp. 2d at 109.  Moreover, the Corps's
declarations do not even mention segregability.  Certainly they have not "suppl[ied] the Court
with the necessary tools to perform a review of segregability -- . . . includ[ing] not only a detailed
justification of the reasons for withholding information, but also a description of the document
from which the information was redacted."  Id.

**CONCLUSION**

For the reasons stated above, both parties' renewed motions for summary judgment will be granted in part and denied in part.  The Corps's renewed motion will be granted with respect to the exemption 5 claim for document 61, and will be granted in part and denied in part as to the exemption 7(C) claim for documents 43-45, 48-49, 64, 138, 165, 167, 168, and 266-67 (the Corps must disclose source names that are on the public record, but may continue to withhold the sources' contact information).  CBF's renewed motion will be granted as to the exemption 7(D) claims for documents 43-45, 48-49, 64, 138, 165, 167, 168, and 266-67, and the exemption 5 claims for documents 6, 9, 43-45, 48-49, 64, 165, 167, 169, 171, 205-06, 310-12, and 452-53.  CBF's motion also will be granted in part and denied in part as to the exemption 7(C) claim for documents 43-45, 48-49, 64, 138, 165, 167, 168, and 266-67.  A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Date: June 24, 2010